IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER MUELLER,

                                                OPINION AND ORDER

                    Plaintiff,

                                         13-cv-514-bbc

        v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Christopher Mueller filed this action seeking judicial review of defendant

Carolyn W. Colvin's denial of his claims for Disability Insurance Benefits and Supplemental

Security Income.  Plaintiff contends that he has been unable to work since May 2009

because of nerve damage, neuropathy, back problems, diabetes, depression and a sleep

disorder.  He has moved for summary judgment, contending that the administrative law

judge hearing his case erred in three respects:

- not developing the record properly to determine whether plaintiff had voluntarily waived his right to representation by a lawyer;

- not making a proper assessment of the opinions of examining physicians and the credibility of plaintiff's complaints;

- misusing the Medical-Vocational rules as a guideline to find plaintiff not disabled at step five; and not relying properly upon the vocational expert testimony.

1

I conclude that plaintiff has failed to prove that the administrative law judge committed any error justifying reversal of the determination that plaintiff is not disabled. Accordingly, plaintiff's motion for summary judgment will be denied.

BACKGROUND FACTS

Plaintiff was born in August 1970. He applied for disability benefits in June 2010, alleging disabling disc disorders of his back and peripheral neuropathy dating back to May 1, 2009. AR 186. He had recently been terminated from a job in Texas where he had been working as a manufacturing engineer in a steel tubing plant, helping the company increase its tube production rate. AR 43-44. Plaintiff has an associate's degree in mechanical design and a bachelor's degree in industrial technology from the University of Wisconsin-Stout. AR 42. As of the time of his hearing, plaintiff was living with his parents, his wife, three children, one grandchild, his sister and his mother-in-law in northwestern Wisconsin.

OPINION

A. Non-Attorney Representation

At the administrative hearing in his case, plaintiff was represented by Dayna Kennett, who was not an attorney, but who was eligible under 20 C.F.R. § 404.1717 for direct payment from the Social Security Administration for her services on behalf of plaintiff. AR 33. Before Kennett became his representative, plaintiff had been represented by another member of the same organization for which Kennett worked (Advantage 2000), who had

withdrawn.  Before that, he had been represented by Kelly Blad of Disability Specialist, Inc.,
who had withdrawn at plaintiff's request.

42 U.S.C. § 406 provides that "[a]n attorney in good standing who is admitted to
practice before the highest court of the State, Territory, District or insular possession of his
residence or before the Supreme Court of the United States or the inferior Federal courts,
shall be entitled to represent claimants before the Commissioner of Social Security."  This
right of counsel to represent clients before the Commissioner has been read by the courts as
conferring a right on claimants to be represented by counsel at disability hearings.  E.g.,
Thompson v. Sullivan, 933 F.2d 915, 922 (7th Cir. 1991) ("A claimant has a statutory right
to counsel at disability hearings."); Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982)
(claimant must be adequately informed of right to counsel in disability hearing).  To protect
this right, the courts have assigned the duty to administrative law judges to question
claimants who are not represented by counsel to make sure that if they waive their right to
a lawyer, or more precisely their right to try to find a lawyer, they do so voluntarily.  If the
administrative law judge does not carry out this duty, he or she then has the duty not just
of developing a full and fair record, but "'scrupulously and conscientiously probe[ing] into,
inquir[ing] of and explor[ing ] for all of the relevant facts.'"  Binion, 13 F.3d at 245 (quoting
Smith v. Secretary of Health, Education and Welfare, 587 F.2d 857, 860 (7th Cir. 1978)).
See also Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978); Gold v. Secretary of Health,
Education and Welfare, 463 F.2d 38, 43 (2d Cir. 1972).

42 U.S.C. § 406 also allows lay persons to represent claimants and specifies that the

Commissioner may prescribe rules and regulations governing the recognition of such agents, other than attorneys.  The Commissioner's current regulations are set out at 20 C.F.R. §§ 404.1700-1725.  Section 1705(b) allows representation by persons who are not lawyers if they are generally known to have a good reputation and character, are not disqualified or suspended from acting as a representative and are not prohibited by law from acting as a representative.  Under § 1717(a), non-attorney representatives can be eligible for direct payment of fees in the same manner as lawyer-representatives if they meet certain criteria, including graduation from an accredited institution of higher learning or at least four years of relevant professional experience and a high school diploma or general educational development certificate, successful completion of a criminal background check, passing a written examination administered by the Commissioner and proof that he or she has completed all continuing education programs prescribed by the Commissioner within the time proscribed.

Plaintiff argues that because his representative was not a lawyer, the administrative law judge had an obligation to question him to determine whether he was voluntarily waiving his right to representation by a lawyer.  The Court of Appeals for the Seventh Circuit has held in a number of cases that the administrative law judge has a heightened standard of care if the claimant appears at a hearing without *any* representative and the administrative law judge fails to obtain a waiver from the claimant, e.g., Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007); Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994); Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991), but I have not found any case

in which the court has imposed such a requirement on an administrate law judge when the claimant appears with a fee-eligible non-attorney representative.

Plaintiff cites a number of decisions in which district courts have held that the obligation to question the plaintiff about his willingness to proceed without counsel extended even to persons represented by fee-eligible non-attorney representatives. E.g., Schramm v. Astrue, 2011 WL 1297285 (E.D. Wis. 2011); Meroki v. Halter, 2001WL 668951 (N.D. Ill. 2001). Given the training and testing required of non-attorney fee-eligible representatives, e.g., AR 120, I am not persuaded that the administrative law judge has such an obligation when the claimant appears by such a representative.

In any event, a claimant's lack of representation is not a reason to remand a case, in and of itself. When a claimant appears without a lawyer, the burden is on the Commissioner to show that the administrative law judge developed the record adequately. The extensive record in this case (868 pages) and the administrative law judge's thorough analysis of that record support a finding that the administrative law judge carried out his duty scrupulously. Plaintiff disagrees, contending that the administrative law judge had a duty to seek a treating source opinion or ask plaintiff's non-attorney representative to obtain one before he relied on the absence of such a report, as he did in his report. ("[D]espite extensive treatment and longitudinal relationships with the claimant, the claimant's treating physicians have submitted no medical opinions stating that the claimant is disabled or asserting any limitations or restrictions greater than those set out in this decision." AR 24.)

The problem with this argument is that plaintiff has not shown that any such report

5

would have bolstered plaintiff's chances of a favorable outcome for his disability claim.  It is not enough for him to say that the failure to obtain one shows that the administrative law judge failed to do his job; once defendant has made the showing that the record was extensively developed and carefully evaluated, plaintiff must show that the alleged oversight would have made a difference to the outcome of plaintiff's claim.  Otherwise, it is only pure conjecture whether one of the physicians would have written a report supporting plaintiff's claim. And that conjecture seems extremely weak in light of the treating physicians' repeated findings that plaintiff had only mild to moderate disc degeneration, full and symmetrical muscle strength, no spinal tenderness, a coordinated gait and no problems with straight leg raising, as discussed in the next section.

Aside from his criticism of the administrative law judge's alleged failure to obtain a waiver from him, plaintiff blames his representative for her failure to obtain and submit a different report in a timely fashion.  He acknowledges that the representative did obtain a November 20, 2012 report from Dr. Amber Erickson, a neurologist, but says she did not submit it to the administrative law judge before he issued his decision on December 7, 2012. Had this report been more helpful to plaintiff, his representative's error might be seen as prejudicial, even if it was only an oversight on her part.  However, Erickson reported only that plaintiff had diabetes, "with likely associated painful diabetic polyneuropathy," without any apparent motor or strength involvement.  AR 871.  She described her plans to try various medications to relieve his pain, AR 872, but said nothing about the effect of the polyneuropathy on plaintiff's ability to work at a sedentary job.

6

It is not probable that this evidence would have changed the administrative law judge's decision.   He was aware that plaintiff had polyneuropathy and took it into consideration in assessing plaintiff's residual functional capacity.   AR 21-24.

## B. Residual Functional Capacity Assessment

Plaintiff alleged disability in the form of degenerative disc disease and diabetes mellitus, along with low testosterone, depression and obstructive sleep apnea.   The administrative law judge found that the first two, degenerative disc disease and diabetes mellitus, were severe impairments, but that the evidence did not show that the others were, because they did not have "the requisite limiting effects on [plaintiff's] ability to perform basic work activities." AR 21.   Plaintiff does not take issue with this finding or with another finding by the administrative law judge that plaintiff's severe impairments did not meet or medically equal the severity of a listed impairment.   (He criticizes the administrative law judge's failure to discuss plaintiff's alleged obesity, Plt.'s Br., dkt. #11, at 31, but plaintiff never raised this as an impairment and it is not supported by his medical records, which show that in June 2010, his height was 6'1" and he weighed 234 pounds.   AR 425.)

Plaintiff objects to the administrative law judge's finding that he has the residual functional capacity to perform sedentary work, so long as he does not ever have to climb ladders, ropes or scaffolds, operates foot controls with both feet only occasionally; and is limited to jobs that can be performed while holding a handheld assistive device in the dominant hand that is required at all times while standing.   He contends that the

administrative law judge erred in determining that he did not have a physical impairment that could be expected to cause pain and other symptoms that are sufficiently intense, persistent or limiting to prevent him from performing sedentary work.

The administrative law judge found that plaintiff's impairments could be expected to cause some symptoms, but that plaintiff's statements about those symptoms were not credible to the extent that they were inconsistent with the residual functional capacity the administrative law judge had found.  AR 22.  (The Court of Appeals for the Seventh Circuit persistently criticizes the manner in which administrative law judge frame their decisions so that they appear to be determining residual functional capacity before undertaking an evaluation of the effects of the claimant's impairments and his or her credibility; the criticism has had little effect on the practice.  In this case, the administrative law judge has provided a sufficiently thorough explanation of his reasons for his determination of plaintiff's residual functional capacity to allow an assessment of the reasons for his conclusion.)

Plaintiff alleged that he could not work because of his degenerative disc disease and his diabetes; he needed a cane or a walker to get around; he did few household chores or any outdoor chores; and he needed help from his wife in getting dressed or shaving.  He testified that his back pain radiated into his groin, he had neuropathy and muscle spasms and spent four to five days each week lying in bed.  He also testified he could sit for only 15 minutes at a time and he had "brain fog" that made it difficult for him to concentrate and follow movies.  The administrative law judge found that plaintiff's allegations were contradicted by

his statements to the doctors and other medical providers who had treated him and by their observations of him.

As the record showed, at many of plaintiff's appointments with his primary physician and with specialists from July 2009 through August 2012, the doctors reported that plaintiff exhibited a well-coordinated gait, non-tender lumbar spine and full and symmetrical muscle strength and tone, despite his degenerative disc disease.  AR 323 (July 21, 2009); AR 378 (Aug. 24, 2009);  AR 314-15 (Jan. 9, 2010); AR 592 (Sept. 24, 2010); AR 591 (Oct. 25, 2010);  AR 829 (Aug. 2, 2012).   In  March 2010 and again in March 2011, plaintiff completed a three-month course of physical therapy and reported a reduction in pain and increase in daily activity.  AR 285, 472.  In January 2011 and in February 2011, plaintiff had a normal gait, 4/5 strength in his lower extremities, intact sensation as well as significant tenderness in his lumbar spine, AR 528, 502, although he complained in January about pain resulting from moving furniture for an hour and a half and from snow blowing.  AR 527. He complained of pain in a visit to his doctor on August 5, 2011, after he had injured his back "cleaning up after trees."  AR 736.  His condition remained similar through August 2012 (intact coordination, no tenderness in his back, full strength and intact sensation).  AR 829.  In addition, at his diabetes checkup that month, he showed intact light touch sensation as well as full strength in his lower extremities.  AR 824.  In fact, most of his visits to doctors in late 2011 and 2012 were for blood sugar checks related to his diabetes and treatment for diabetic nail problems.  AR 692-704, 713-15, 717-27, 819-23, 834-36, 858-60, 867-68.

In March 2011, plaintiff reported walking a quarter-mile and walking uphill without

a cane. AR 477. On February 15, 2011, he told his occupational therapist that he was planning to do yard work, fix up a boat in the spring and do home repairs. AR 471.

The administrative law judge was not persuaded that plaintiff had any "brain fog," because he remained on task and concentrating for the entire hearing, which last almost an hour. AR 22. Plaintiff takes issue with this finding, saying that his foggy condition was not constant, but it was frequent, and that the administrative law judge had an obligation to consider the type, dosage, effectiveness and side effects of any medication that plaintiff was taking. Plt.'s Br., dkt. 11, at 27. Plaintiff did not identify any medical findings in the record to support his allegation that his concentration was affected, such as complaints to his doctors that he had concentration difficulties, although he did testify at his hearing that he did not drive on days that he took Baclofen. With the evidence that was in the record, the administrative law judge did not err in finding that plaintiff's reports of his pain and impairments were not entirely credible and that they did not support greater incapacitation than the administrative law judge found.

## C. Medical-Vocational Rules

Plaintiff's final objection is that the administrative law judge did not apply the Medical-Vocational Guidelines properly to the facts of his case. This objection cannot be assessed without understanding how the administrative law judge reached his conclusion that plaintiff could perform jobs that exist in significant numbers in the national economy. He began by pointing out that for a claimant who can perform all or most of the exertional

demands of a given level of exertion, the guidelines determine disability or non-disability.

For example, when the given level of exertion is sedentary, the applicable table is Table No. 1 - Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s).  Sections 201.01-201.29 set up the grid:  individuals by age (advanced, closely approaching advanced age, younger individual aged 45-49 and younger individuals aged 18-44), educational levels and previous work experience.  A person of advanced age with limited education whose work experience is either nonexistent or unskilled is classified as "disabled," § 201.01, whereas a person under 45 is classified as "not disabled" even if she has performed only unskilled work or has no past work history and is illiterate or unable to communicate in English.  § 201.23. Under this table, plaintiff would have been found non-disabled for purposes of sedentary work if he had no exertional or non-exertional limitations, whatever his level of education or prior work.

But the administrative law judge assessed non-exertional limitations, so he could not use the table. Instead, he followed the procedure in SSR 83-14.  Among other things, this rule provides that when an individual's exertional residual functional capacity does not coincide with the definition of any of the ranges of work defined in 20 C.F.R. §§ 404.1567 and 404.967, it may mean that many of the jobs classified as sedentary are not available to the claimant.  Where it is not possible to determine how many of these jobs have been eliminated (what the rules refer to as the "erosion" of the occupational base), the adjudicator may have to call in persons of specialized knowledge, such as vocational experts, SSR 83-14,

11

which is what the administrative law judge did in this case.  He arranged for vocational expert Mary Harris to appear at plaintiff's hearing.  Harris testified that a person of plaintiff's age, education and work experience with plaintiff's non-exertional limitations (only occasional operation of foot controls bilaterally, no climbing of  ladders, ropes or scaffolds, avoiding all exposure to unprotected heights and all exposure to hazardous machinery and using a handheld assistive device in the dominant hand at all times when standing) would be able to perform the jobs of cost clerk, production clerk and order clerk, all of which existed in large numbers in the state and national economies.  AR 70-72.  In other words, the administrative law judge followed the course laid out in SSR 83-14.

Plaintiff says that the administrative law judge made a mistake in referring to 20 C.F.R., Table 1 when he said that "[i]f the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.08."  This was a miscitation by plaintiff; the administrative law judge referred to Rule 201.28 and he did so only to make the point that he could not apply Rule 201.28 to plaintiff's case, because plaintiff did not have the residual functional capacity to perform the full range of sedentary work, and thus he needed to call a vocational expert at plaintiff's hearing.

Plaintiff says that the administrative law judge did not ask the vocational expert to identify plaintiff's transferable skills, but SSR 83-14 does not require him to ask that question.  It was sufficient for him to make clear to the expert what plaintiff's exertional and non-exertional limitations were and to rely on her to identify jobs in the national economy

that plaintiff could perform, given his limitations.  She was qualified to determine from

plaintiff's past employment whether the skills that enabled him to perform his previous jobs

would be ones enabling him to perform the jobs she identified.

In summary, I conclude that plaintiff has failed to show that the administrative law

judge erred in any respect in concluding that plaintiff was capable of performing substantial

gainful work in the state and local economy.


ORDER

IT IS ORDERED that plaintiff Christopher Mueller's motion for summary judgment,

dkt. #10, is DENIED and the decision of defendant Carolyn W. Colvin, Acting

Commissioner of Social Security, is AFFIRMED.  The clerk of court is directed to enter

judgment for defendant and close this case.

Entered this 29th day of July, 2014.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge

13